**ENTERED**

**OCT 2 6 2007**

**K.R.W.**

**F I L E D**

___O'clock &___min.___N

**OCT 2 6 2007**

United States Bankruptcy Court
Columbia, South Carolina (17)

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

|  |  |
|---|---|
| IN RE: | C/A No. 05-15042-JW |
| | Chapter 7 |
| Derivium Capital, LLC, | **ORDER** |
| Debtor(s). | |

This matter comes before the Court upon the Chapter 7 Trustee's Notice and Application for Sale of Property Free and Clear of Liens and Settlement of Claims in Connection Therewith ("Application"). Alan Grayson, the AMG Trust, and General Holding, Inc. filed an objection to the Application, with which Newton Family LLC, WCN/GAN Partners Ltd., Robert Sabelhaus, and Melanie Sabelhaus have joined. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H), and (O). Based upon the pleadings and the arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law[1]:

## FINDINGS OF FACT

1.     Derivium Capital, LLC ("Debtor") is a limited liability company organized and existing under the laws of the State of South Carolina. On September 1, 2005, Debtor commenced this case by filing a voluntary petition under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. On November 3, 2005, the United States Bankruptcy Court for the Southern District of New York entered an order converting the case to a case under

---

[1] To the extent any Findings of Fact constitute Conclusions of Law, they are adopted as such. To the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

chapter 7 and subsequently transferred venue to this District. Kevin Campbell was appointed as the chapter 7 trustee ("Trustee") on November 7, 2005.

## Background

2.    Debtor was originally formed in January 1998 under the name First Security Capital, LLC, a South Carolina limited liability company, as a financial services firm offering financial tools and asset management. In 2000, Debtor changed its name to Derivium Capital, LLC. Debtor is owned by Charles Cathcart (50%); Scott Cathcart (25%); and Yuri Debevc (25%).

3.    Debtor's business primarily consisted of a "90% Stock Loan Program." Under this loan product, clients would pledge their stock to Debtor as collateral for a loan in the amount of 90% of the stock's value.

4.    Unbeknownst to the borrowers, Debtor sold the pledged stock as soon as Debtor received it. The proceeds of the stock sales were transferred to Debtor's checking accounts. Approximately 90% of the proceeds were then used to fund the "loans" to the borrowers. The remaining 10%, which amounted to approximately $100 million in net proceeds of the stock sales over the course of Debtor's operations, were then used to pay Debtor's operating expenses and to fund various venture capital investments.

5.    At the time of the bankruptcy filing of the Debtor, there were numerous suits pending between creditors of Debtor and Debtor, officers and owners of Debtor, entities affiliated with the Debtor and others relating to this stock program.

6.    Early in the case, the Trustee began negotiations with counsel for Newton Family, LLC, WCN/GAN Partners, Ltd., General Holding, Inc., Alan M. Grayson, The AMG Trust, Robert Sabelhaus and Melanie Sabelhous (collectively, the "Active

Creditors"), who asserted claims against certain third parties against whom the Trustee asserted he had the sole standing to pursue. The Trustee contended that it would be appropriate for the Court to stay any actions brought by the Active Creditors for the benefit of the estate. The Active Creditors, on the other hand, asserted they were entitled to continue their litigation.

7.      On November 9, 2006, the Trustee and the Active Creditors filed a Notice and Application for Settlement and Compromise, which described a settlement agreement they had reached regarding the parties' claims against Charles Cathcart, Yuri Debevc, Scott Cathcart, Shenandoah Holding, Ltd., Bancroft Ventures Ltd., Veridia Solutions, LLC, Bryan Jeeves, the Jeeves Group of Companies, Derivium Capital (USA), Inc., Diversified Design Associates, and Spencer Partners, Ltd. (collectively, "Common Defendants"). The settlement agreement provided, in part, that the Trustee's counsel would be lead counsel and have primary authority in the cases involving the Common Defendants. The parties agreed that any recoveries against Common Defendants would be divided 80% to the bankruptcy estate and 20% to the Active Creditors. The Active Creditors agreed

> (a) to cooperate in consolidating or coordinating the cases in a manner which is in the bankruptcy estate's best interest, (b) to prepare for and participate in the discovery, trial and appeals against the Common Defendants, (c) to be ready for trial against the Common Defendants, (d) to enter a joint prosecution agreement to protect the confidentiality of the work product the parties anticipate sharing, (e) to share information they have regarding the Common Defendants, and (f) *not to unreasonably withhold consent to any settlement reached between the estate and the Common Defendants, including any settlement that encompasses the Active Creditors' claims.* (emphasis added)

The Trustee agreed "to allow the Active Creditors to continue as a party and participate in discovery and trial against the Common Defendants, *including the pursuit of individual claims*...."

8.      The Court approved the settlement agreement by order entered January 23, 2007.

### The Trustee's Investigation of Veristeel

9.      The Trustee has alleged that the proceeds from Derivium's stock program provided the funding for a start-up company called Scienda, LLC ("Scienda"). Scienda filed two bankruptcy cases in this Court. In its second bankruptcy, a voluntary chapter 7, Scienda disclosed that on February 16, 2004 it had voluntarily surrendered substantially all of its assets to Charles Cathcart, who claimed a first priority lien on the assets. Thereafter, a substantial portion of those assets were purportedly transferred to Spencer Ventures Partners, LLC, a wholly owned affiliate of Spencer Partners Limited, an entity formed under the laws of the Isle of Man. Spencer Ventures Partners, LLC then transferred the assets to Veristeel, Inc. ("Veristeel"), in exchange for Veristeel stock. The Trustee has alleged that the various transfers of these assets and the Veristeel stock are fraudulent transfers, which are avoidable for the benefit of Debtor's bankruptcy estate.

10.      On January 2, 2007, the Trustee served Veristeel with his First Set of Interrogatories and Requests for Production, which included requests for identification of all Veristeel bank and brokerage accounts, assets held by Veristeel from January 1, 1997 to present and information regarding any trusts or other entities in which Veristeel held an interest.

4

11.    On February 6, 2007, Veristeel responded to the First Set of Interrogatories and identified six current and former bank and brokerage accounts. The Trustee subsequently sent subpoenas to financial institutions for each of the six accounts identified in Veristeel's responses and turned these records over to a forensic accountant.

12.    In response to the Trustee's Requests for Production, Veristeel produced tax returns for years 2004 – 2005 and financial statements for years 2004 – 2007, which were sworn under penalty of perjury by Scott Cathcart, CEO, and by Jonathan Sandifer, CFO, as accurate. Veristeel also produced a list of assets, which are encumbered by a substantial lien. Finally, Veristeel produced a 2005 appraisal by a third party, which established the orderly liquidation value of Veristeel to be $541,025.

13.    On January 24, 2007, the Trustee's counsel took the deposition of Veristeel pursuant to Fed. R. Civ. P. 30(b)(6). Jonathan Sandifer, Veristeel's CFO, appeared as Veristeel's designee and responded to questioning about Veristeel's assets, liens, sales, cash flow, investors, and other topics.

14.    On March 29-30, 2007, the Trustee's counsel conducted a site visit of Veristeel in Las Vegas, Nevada in connection with settlement negotiations between the Trustee and Veristeel. The Trustee's counsel viewed Veristeel's equipment and offices and met with a potential purchaser of the Veristeel stock. The Trustee, however, ultimately rejected the proposed settlement because it would not result in sufficient benefit to the estate.

15.    Based on his investigation, the Trustee has concluded that Veristeel lacks any material equity in its assets with which to satisfy a judgment against it.

### The Trustee's Investigation of Scott Cathcart

16.    On January 2, 2007, the Trustee served Scott Cathcart with his First Set of Interrogatories and Requests for Production, which included requests for identification of all bank and brokerage accounts, assets held by Scott Cathcart from January 1, 1997 to present, and information regarding any trusts or other entities.    On February 5, 2007, Scott Cathcart responded to the First Set of Interrogatories and identified seventeen current and former bank and brokerage accounts. He also produced his tax returns for the years 1999 – 2004.

17.    The Trustee subsequently sent subpoenas to financial institutions for each of the seventeen accounts identified in Scott Cathcart's responses and subpoenaed records relating to numerous other accounts at banks, brokerage firms, and other financial institutions in which Scott Cathcart was believed to have an interest.    In total, the Trustee received records for approximately thirty accounts and turned these records over to a forensic accountant.

18.    On January 23, 2007, the Trustee's counsel took the deposition of Scott Cathcart.    He testified for nearly eight hours regarding his role in the 90% Stock Loan Program, transfers of assets to and by him and other topics.

19.    On June 14, 2007, the Trustee's counsel again took the deposition of Scott Cathcart for the sole purpose of discovering assets that may be available to satisfy a judgment.    He again testified for several hours regarding his assets and liabilities and certain transactions reflected on account documents.    He also produced a financial statement for himself and his wife, as well as the WJC Fern Hill Residence Trust and the SDC Fern Hill Residence Trust, which he has sworn under penalty of perjury is accurate.

20.    Based on this investigation, the Trustee has concluded that Scott Cathcart lacks any material, non-exempt assets with which to satisfy a judgment against him.

<u>Proposed Sale and Settlement</u>

21.    In late August and early September 2007, the parties conducted settlement negotiations.    The negotiations included talks with Craig Severance, a principal of Groundswell, LLC ("Groundswell"), a proposed purchaser of the Veristeel stock. Groundsell is a Delaware limited liability company, whose sole members are Craig Severance and John Diserens.    Craig Severance is the uncle of Scott Cathcart's wife.

22.    On September 7, 2007, Veristeel, Groundswell, Scott Cathcart and the Trustee reached a settlement agreement ("Settlement Agreement").    Pursuant to the Settlement Agreement:

(a)    the Trustee recovers the Veristeel stock for the benefit of the bankruptcy estate and sells the stock to Groundswell for $750,000,

(b)    as an express condition for the offer to purchase, the Trustee and the Active Creditors, on the one hand, and Veristeel, Groundswell, Scott Cathcart, and the Related Entities[2], on the other, mutually release each other; and

(c)    Scott Cathcart and the Related Entities enter into a confession of judgment ("Confession of Judgment") in an amount up to $5 million, which can only be filed within three years as to Undisclosed Assets (as that term is defined in the Confession of Judgment, attached as Exhibit A to the Settlement Agreement).

---

[2] The Related Entities include The Whitney and Scott Cathcart Family Trust a/k/a The Whitney and Scott Cathcart Family Trust 2000 a/k/a the Cathcart Family Trust Dated 12/26/00; the SDC Fern Hill Residence Trust; the WJC Fern Hill Residence Trust, Perseverus, LLC, and Acropolis Capital Group Ltd.

23.    According to the Affidavit of Groundswell, Groundswell has no interest in purchasing the Veristeel stock absent the execution of the releases.

## CONCLUSIONS OF LAW

The Trustee's Application seeks: (1) the Court's approval of a sale of property of the estate; (2) the Court's approval of a settlement of the Trustee's claims against Scott Cathcart, Veristeel, and the Related Entities; and (3) a Court order mandating the releases of all claims of the Active Creditors and other creditors against Scott Cathcart, Veristeel, and other non-debtor third parties.  All parties have indicated through counsel that the Application before the Court is an "all or nothing deal"; that is, all elements of the Settlement Agreement must be approved in order for the Application to be granted because the proposed sale is conditioned upon the execution of the releases.

The Active Creditors ask the Court to deny the Application for several reasons. The Active Creditors' primary concerns regarding the Settlement Agreement do not appear to be related to the sale of Veristeel stock by itself but to the Settlement Agreement's release and the proposed confession of judgment by Scott Cathcart and the Related Entities.[3]  The Active Creditors' principal argument is that the Trustee does not have the authority to require them to release their claims against non-debtor third parties; therefore, the Application as a whole must be denied.

I.    **The Trustee's Authority to Release the Active Creditors' Claims Against Non-Debtors**

The Trustee asserts that he has the authority to release the Active Creditors' claims against Scott Cathcart, who is a Common Defendant under the Order Approving

---

[3] The Active Creditors state in their objection that "[w]ith regard to the Veristeel stock sale, the sale of those shares for $750,000, standing alone, might be defensible, given the manner in which Scott Cathcart has run that business into the ground...."

Settlement entered by this Court on January 23, 2007, and the authority to release the
Active Creditors' claims against the remaining Released Parties[4] pursuant to the Order
Approving Settlement, 11 U.S.C. § 105, 11 U.S.C. § 362, and well-established case law
in this Circuit.   In response, the Active Creditors argue that (1) with respect to their
claims against the Common Defendants, the Order Approving Settlement does not confer
to the Trustee the authority to settle their claims without their consent, it provides only
that the Active Creditors should not unreasonably withhold consent to a settlement that
encompasses their claims; (2) with respect to the Active Creditors' claims against the
non-Common Defendants, the Order Approving Settlement provides the Trustee with no
authority to settle their claims; (3) the release is overbroad because the Trustee seeks
releases of all creditors' claims against several Released Parties who are not Common
Defendants;[5] and (4) the cases applying 11 U.S.C. § 105 do not authorize the irrevocable
release of creditors' personal claims against non-debtor third parties over the objections
of the releasing parties.

The Order Approving Settlement provides that the Active Creditors agree:

> (a) to cooperate in consolidating or coordinating the cases in a
> manner which is in the bankruptcy estate's best interest, (b) to
> prepare for and participate in the discovery, trial and appeals
> against the Common Defendants, (c) to be ready for trial against
> the Common Defendants, (d) to enter a joint prosecution
> agreement to protect the confidentiality of the work product the
> parties anticipate sharing, (e) to share information they have
> regarding the Common Defendants, and (f) *not to unreasonably*

---

[4] The Released Parties include Veristeel; Scott Cathcart; the Related Entities; Spencer Grimes, a current
investor in Veristeel; Groundswell; and all of their respective heirs, beneficiaries, spouses, officers,
directors, shareholders, lenders, owners, employees, managers, members, professionals, partners, assigns,
agents, fiduciaries, affiliates and other legal representatives.

[5] The Trustee's Application states that the Order Approving Settlement entered on January 23, 2007
resolved disputes between the Derivium Trustee and creditors concerning claims against Veristeel and
Scott Cathcart.  However, Veristeel was not enumerated as a Common Defendant in the Order Approving
Settlement.

> *withhold consent to any settlement reached between the estate
> and the Common Defendants, including any settlement that
> encompasses the Active Creditors' claims.*

The Order does not appear to provide the Trustee with the authority to settle the Active Creditors' claims against the Common Defendants absent their consent, unless it is being unreasonably withheld.

The Active Creditors argue that their objection to the Application is not unreasonable because (1) Scott Cathcart, a central wrongdoer in the scheme to defraud them, is providing no consideration in exchange for his release; (2) the Active Creditors' claims against Scott Cathcart, Veristeel and the Related Entities are strong and would likely result in judgments that would exceed $100 million, thus the $600,000 consideration for the release is grossly insufficient; (3) the substantial evidence of the claims against the Released Parties has been painstakingly and successfully collected at significant expense to the estate and Active Creditors (under the terms of the Settlement Order); and (4) the Confession of Judgment is of little or no value because it limits enforcement to the Trustee and may not be assigned, is operative for only three years, and may only be asserted against "undisclosed assets" or assets that are proved to have been purchased with or funded by "undisclosed assets," and even then, is limited to $5,000,000.

While the Court is convinced that the Trustee and his counsel have been diligent in their efforts and strongly believe the settlement is in the best interests of creditors, based on the evidence presented, the Court cannot conclude that the Active Creditors' objection to the Application is unreasonable. Considering the circumstances of this case, it is not unreasonable to continue to have concerns for the disclosures made by Scott

Cathcart or to expect consideration from him directly in exchange for a full release of all

claims. Since the Trustee concedes that a substantial judgment is likely as a part of other

ongoing litigation, it is not unreasonable for sophisticated creditors who have actively

litigated these matters to object to a settlement for less than 1% of the amount of their

claims, choosing instead to rely on the prospects of collecting more from a likely

substantial judgment. The Trustee and his counsel's chief concern appears to be the

possible difficulties of collecting any judgment that might be obtained. However,

weighing the prospects of collection of a significantly larger judgment against the present

settlement amount and release terms, the Court does not believe that the Active Creditors

are acting unreasonably in withholding their consent. Finally, the limitations on the

Confession of Judgment do appear to make its value questionable.

However, even if the Active Creditors' withholding of consent was unreasonable,

the Court finds that the Settlement Agreement's release is overbroad and exceeds the

scope of the authority provided to the Trustee under the Order Approving Settlement.

The release requires the Active Creditors to:

> [H]ereby absolutely, unconditionally and irrevocably release[], remise[]
> and forever discharge[] Veristeel, Scott Cathcart, the Related Entities,
> [Spencer] Grimes, Groundswell, and all of their respective heirs,
> beneficiaries, spouses, officers, directors, shareholders, lenders, owners,
> employees, managers, members, professionals, partners, assigns, agents,
> fiduciaries, affiliates and other legal representatives (collectively, the
> "Released Parties") from all demands, actions, causes of actions [sic],
> suits, claims, damages and any and all other demands and liabilities
> whatsoever of every nature, known or unknown, suspected or unsuspected,
> both at law and in equity, which the Releasing Parties or any of their
> respective officers, directors, employees, managers, members, partners,
> agents, successors, affiliates, assigns or other legal representatives may
> now or hereafter own, hold, have or claim to have against the Released
> Parties or any of them for, on, or by reason of any circumstance, action,
> cause or thing whatsoever arising or which has arisen at any time on or
> before the date of this Agreement for or on account of, or in relation to, or

in any way connected with Derivium or Shenandoah or any of the Operating Companies ..., or any predecessor, successor, successor, affiliate or partner of Derivium or Shenandoah or any of the Operating Companies, or any program, product, financing or service offered thereby or thereto, or Scott Cathcart's employment by or membership interest in Derivium or Shenandoah or any of the Operating Companies, or any relationships, guarantees, investments, obligations, loans, or instruments relating to Derivium, Shenandoah, or any of the Operating Companies, or any affiliates thereof.

The Court agrees with the Active Creditors that the above language is vague and broad and could result in unintended releases of the Active Creditors' and Trustee's claims against unnamed non-debtor third parties. For example, the Active Creditors note that the term "affiliates" could be construed as releasing anyone having to do with the "90% Stock Loan Program," the term "lender" could be construed as releasing Bancroft Ventures Limited (the purported "lender" for the stock program), and the term "officer" could be construed to include Jonathan Sandifer, the Chief Financial Officer of Veristeel. These non-debtor third parties have not provided consideration for their release.

Furthermore, many of the Released Parties are not "Common Defendants" under the Order Approving Settlement, including Veristeel, Inc., the Whitney and Scott Cathcart Family Trust, the SDC Fern Hill Residence Trust, the WJC Fern Hill Residence Trust, Perseverus, LLC, Acropolis Capital Group, Ltd, Spencer Grimes, and Groundswell, LLC. The Order Approving Settlement does not provide the Trustee with the authority to settle the Active Creditors' claims against these parties. On this ground alone, the Application is defective.[6] Accordingly, the Trustee must rely on some other source of authority to settle the Active Creditors' claims absent their consent.

---

[6] The Court observes that adjustments to the Settlement Agreement and release could make a settlement more reasonable.

The Trustee also asserts that he has authority to release the Active Creditors' claims against the Released Parties who are not "Common Defendants" pursuant to 11 U.S.C. § 105, which provides, in part, that "[n]o provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." The Active Creditors argue that the Court's powers under 11 U.S.C. § 105, while broad, do not extend to ordering a private party to release its personal claims against another private party.

The personal claims of creditors are not property of the estate. See Fisher v. Apostolou, 155 F.3d 876, 879 (7th Cir. 1997); In re Bridge Information Systems, Inc., 344 B.R. 587, 594 (Bankr.E.D.Mo. 2006)(citing In re E.F. Hutton Southwest Properties II, Ltd., 103 B.R. 808, 812 (Bankr. N.D.Tex 1989). A claim is personal if the claimant itself is harmed and no other claimant or creditor has an interest in the cause. In re Bridge Information Systems, Inc., 344 B.R. at 594. When a third party has injured not the bankrupt corporation itself but a creditor of that corporation, the trustee cannot bring a suit against the third party.[7] See id. (citing Steinberg v. Bucyznski, 40 F.3d 890, 893 (7th Cir. 1994); see also Caplin v. Marine Midland Grace Trust Co. of New York,406 U.S. 416, 434, 92 S.Ct. 1678, 1688 (1972)(holding that a bankruptcy trustee lacks standing to sue on the behalf of creditors where the recovery would not be property of the estate). Without standing to bring a creditor's personal claim, it would necessarily follow that a trustee would lack authority to settle such a claim. See DSQ Property Co., Ltd. v.

---

[7] A trustee would have standing if the creditor unconditionally assigned its claim to the trustee. In re Bogdan, 414 F.3d 507, 513 (4th Cir. 2005).

13

DeLorean, 891 F.2d 128 (6th Cir. 1989)(providing that a trustee, who lacks standing to assert the claims of creditors, equally lacks standing to settle them); In re Van Diepen, P.A., 236 Fed. Appx. 498, 502 (11th Cir. 2007)(unpublished)(stating that a bankruptcy court would not have authority to include in a settlement agreement a release of third party non-debtors where their property is not part of the bankruptcy estate, but finding that the bankruptcy court did have authority in the instant case under 11 U.S.C. § 541 because the property of the third party non-debtors was acquired by means of a fraudulent conveyance).

In the Notice and Application for Settlement and Compromise filed November 9, 2006, the Trustee appears to acknowledge the existence of the Active Creditors' personal claims when he included as a "Benefit to the Estate" the fact that the proposed settlement allows the Trustee to take 80% on claims owned solely by the Active Creditors that the Trustee might not otherwise be able to assert. Due to the breadth of the release, the Court cannot conclude that the release does not effectively encompass the personal claims of the Active Creditors. "As a general rule, releases by a Trustee should be limited to claims the Trustee is able to pursue." In re Telcar Group, Inc., 363 B.R. 345, 356 (Bankr. E.D.N.Y. 2007)(noting that in those instances where nonconsensual nondebtor releases have been permitted, the circumstances involved large complex Chapter 11 cases where the releases were important to the proffered Chapter 11 plan). The Court is not aware of any unique circumstances in this case that would justify using 11 U.S.C. § 105 to permit the Trustee to release the Active Creditors' personal claims against non-debtor third parties who are not Common Defendants. Accordingly, the Court finds that the Settlement Agreement and release should not be ordered pursuant to 11 U.S.C. § 105.

The Trustee further argues he has authority to settle the claims against the "non-Common Defendants" under Fourth Circuit case law. The Trustee asserts that the Fourth Circuit equipped the Court with authority to release the claims of creditors against both debtors and non-debtors in Gulf Ins. Co. v. Ruppert Landscaping Co. (In re National Am. Ins. Co.), 187 F.3d 439, 441 (4th Cir. 1999). In Ruppert, the Fourth Circuit held that creditors lacked standing to assert causes of action in district court that shared the same underlying focus as the claims that the trustee could bring in bankruptcy court and that the trustee should have the "first crack at challenging ... the transaction." The Trustee argues that Ruppert authorizes the Court to prevent the Active Creditors from "artfully pleading" their way out of the bankruptcy process in order to jeopardize the ordered distribution of the bankruptcy estate. The Active Creditors argue that while the language of Ruppert appears broad, the Ruppert case is distinguishable from this case. The trustee in Ruppert was trying to prevent the creditors from prematurely pursuing separate claims in district court to the potential detriment of the estate's similar causes of action. Ruppert did not address the trustee's right to permanently settle creditors' claims.

The Ruppert decision addressed the competition between the estate and its creditors' assertion of common or similar claims and the timing thereof. [8] See also In re Poth, 99 Fed. Appx. 446, 457 (4th Cir. 2004)(unpublished). The parties in this case avoided a Ruppert-like determination by entering into the November 9, 2006 Settlement

---

[8] In Ruppert, the Fourth Circuit states that "the trustee's single effort eliminates the many wasteful and competitive suits of individual creditors." However, where the personal claims of creditors are sufficiently related to the claims of the estate and could affect the amount of property in the bankruptcy estate, a trustee can temporarily block adjudication of claims that are not property of the estate by petitioning the bankruptcy court to enjoin the litigation. Fisher v. Apostolou, 155 F.3d 876, 882 (7th Cir. 1998). The Court has equitable powers under 11 U.S.C. § 105 to stay the creditors' litigation of those claims while the bankruptcy case is pending, which would effectively prevent creditors from "undermining the ordered distribution of the bankruptcy estate."

Agreement, which set forth terms for proceeding on competing claims. By virtue of the Order Approving Settlement, those terms are binding as to all parties on these issues. The Settlement Agreement addresses the means of settlement of such claims and included specific claims while excluding others.   Excluding non-Common defendants can be viewed either as oversight or a specific decision by the parties, but they were nonetheless excluded. At this point, the Court has not been provided sufficient information to determine the nature of either the estate's or the creditors' claims against non-Common Defendants in order to independently determine whether the reasoning of Ruppert should apply.   In the Court's view, the Trustee has the initial burden of establishing that the estate has an ownership interest in the Active Creditors' claims against the non-debtor third parties. See DeBold v. Case, 452 F.3d 756, 761 (8th Cir. 2006).   The evidence is insufficient to convince the Court that the estate's interest in such causes of action should provide the estate the "first crack" at litigating the claims, much less to conclude they may be settled under the Ruppert standard at this time.

The Trustee further relies on In re Homegold Financial, Inc., C/A No. 8:04-CV-2379, slip op. (D.S.C. Oct. 5, 2004), an unpublished opinion, as support for his authority to release the Active Creditors' claims against non-debtors.   In Homegold, the district court cited Ruppert for the plan trustee's authority to release claims of creditors against non-debtors. The Active Creditors assert that Homegold is distinguishable because it involved a settlement for $41.8 million dollars under a confirmed liquidating plan in a chapter 11 case.   The trustee in that case was provided with the authority to enter into a settlement agreement with the released parties under a liquidating plan that had been confirmed by vote of 95% of the creditors.   In Homegold, there was pressure for a quick

settlement due to a wasting insurance policy and a large number of elderly and infirmed creditors who needed a meaningful distribution in an economical and expeditious manner. In this case, the Active Creditors, who assert that they represent a supermajority of the creditors, oppose the settlement. In short, they argue the factors that influenced the approval of the settlement in <u>Homegold</u>, such as the age of the creditors, the considerable amount of the settlement and a wasting insurance policy, are not present in this case. This Court agrees that <u>Homegold</u> is distinguishable from this case and does not authorize the Trustee to require a settlement between the Active Creditors' and non-debtor parties who are not Common Defendants.[9]

The Court finds that the Application must be denied for the foregoing reasons. Nevertheless, Court will also determine whether the proposed sale would satisfy the requirements of 11 U.S.C. § 363 and whether the settlement would satisfy the factors outlined in <u>In re Healthco Intern. Inc.</u>, 136 F.3d 45, 50 (1st Cir. 1998)(citing <u>Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S. 414, 424, 88 S.Ct. 1157, 20 L.Ed. 2d 1 (1968)) and in this Court's opinion in <u>In re Jaraki</u>, C/A No. 04-09182, slip op., 2006 WL 2612198, at *3 (Bankr. D. S.C. Jan. 20, 2006)(citing <u>U.S. ex rel. Rahman v. Oncology Associates, P.C.</u>, 269 B.R. 139, 149 (D.Md. 2001)).

II.    **Analysis of the Proposed Sale**

Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate...." 11 U.S.C. § 363(b)(1). In determining whether to approve a

---

[9] The Court further notes that the Trustee appears to be seeking injunctive or other equitable relief, which would require the filing of an adversary proceeding under Fed. R. Bank. Pro. 7001. In <u>Homegold</u>, the trustee also sought injunctive relief against the creditors but properly filed an adversary proceeding to obtain such relief.

sale proposed by a trustee under this section, courts generally apply a business judgment test. See In re Psychrometric Systems, Inc., 367 B.R. 670, 674 (Bankr. D. Colo. 2007) (citing 3 Collier on Bankruptcy at ¶ 363.02[1][g] (Lawrence P. King et al, eds. 15th ed. rev. 1997); In re Bakalis, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998). Although the Trustee's business judgment is to be given "great judicial deference," the Court must scrutinize whether the Trustee has fulfilled his duty to "maximize the value obtained from a sale, particularly in liquidation cases." In re Bakalis, 220 B.R. at 532; see also In re Roman, C/A No. 04-13373-jw, slip op. (Bankr. D. S.C. Oct. 4, 2006).

The gross consideration paid pursuant to the Settlement Agreement is $750,000. The Trustee asserts that the portion of the consideration attributable to the stock is 20% or $150,000. The remainder of the consideration appears to be in exchange for the execution of a mutual release. Groundswell's offer to purchase the stock for $750,000 is expressly conditioned upon the execution of mutual release between the Trustee and the Active Creditors, on the one hand, and Veristeel, Groundswell, Scott Cathcart, and the Related Entities, on the other. Veristeel asserts that it is on the brink of liquidation and its assets may be worth less than its secured debt. Without the sale and the influx of the additional capital, Veristeel contends that it will exhaust its working capital and lose the ability to find additional capital, which could make its stock worthless and perhaps prevent the Trustee from making any meaningful recovery from Veristeel. It appears that approving the sale may enable Veristeel to continue operating and could improve the chances of a recovery from Veristeel on behalf of the estate. It further appears that potentially complicated issues of law and fact exist as to whether the stock is property of

the estate. [10]    Based upon the record and the arguments of counsel, it appears that the sale

of the stock would be in the best interest of Debtor's bankruptcy estate and thus would

satisfy the business judgment standard.

### III.    Analysis of Settlement Agreement

When asked to approve a settlement, the Court must consider the following

factors:

> (a) the probabilities of success in litigation;

> (b) the difficulties, if any, to be encountered in the matter of collection;

> (c) the complexity of the litigation involved (including the expense,
> inconvenience and delay necessarily attending the litigation); and

> (d) the paramount interest of the creditors and a proper deference to their
> reasonable views.

In re Healthco Intern. Inc., 136 F.3d 45, 50 (1st Cir. 1998)(citing Protective Comm. for

Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424, 88 S.Ct.

1157, 20 L.Ed. 2d 1 (1968)); In re Martin, 91 F.3d 389, 393 (3rd. Cir. 1996); Drexel

Burnham Lambert, Inc. v. Flight Transp. Corp. (In re Flight Transp. Corp. Sec. Litig.),

730 F.2d 1128, 1135 (8th Cir.1984); In re Jaraki, C/A No. 04-09182, slip op., 2006 WL

2612198, at *3 (Bankr. D. S.C. Jan. 20, 2006) (citing U.S. ex rel. Rahman v. Oncology

Associates, PC, 269 B.R. 139, 149 (D. Md. 2001)). "A [c]ourt may approve a settlement

---

[10] Whether the stock is an asset of the estate is disputed by Spencer Partners Limited, an entity formed
under the laws of the Isle of Man, which claims an interest in the Veristeel shares proposed to be sold.
Spencer Partners Limited owns Spencer Ventures Partners, which allegedly received the stock from
Charles Cathcart. The Application provides that the Trustee and Laurence Keenan, in his capacity as the
Provisional Liquidator and Deemed Official Receiver of Spencer Partners Limited ("Spencer Liquidator"),
agree that the Trustee will hold the 20% portion of the purchase price in trust until such time as the Trustee
and the Spencer Liquidator have resolved any issues between them with respect to the portion of the
purchase price attributable to the stock. This issue may also be resolved by a pending settlement
agreement.

over objections unless the proposed settlement falls below the lowest point in the range of reasonableness." Jaraki, at *3. The essential inquiry that the Court must make in this case is to determine whether the settlement agreement is "fair and equitable" and in the best interests of the estate. Oncology Associates, 269 B.R. at 150. The Trustee asserts that these factors are satisfied as follows:

### A. Probability of Success

The Trustee agrees with the Active Creditors that there is a high likelihood of success with respect to the Trustee's claims against the Released Parties; however, the Trustee asserts that the anticipated costs of success, the difficulty in collecting any judgment and the complexity of the litigation and expense, inconvenience and delay support approval of the Settlement Agreement. The Active Creditors contend that they would likely get judgments in excess of $100 million if they were to pursue the litigation. They also argue that the costs of pursuing the litigation will continue regardless of this settlement because the Trustee is still pursuing its claims against other defendants, including Charles Cathcart and Yuri Debevc, which involve the same facts and issues of law.

The Court finds that this factor weighs against the approval of the Settlement Agreement.

### B. Difficulties to be Encountered in Collecting any Judgment

Based on an extensive investigation, the Trustee has concluded that collecting any judgment against Scott Cathcart, the Related Entities and Veristeel would be extremely costly, burdensome, and difficult. The Trustee asserts that he has not uncovered any material non-exempt assets with which to satisfy a judgment against Scott Cathcart or the

20

Related Entities. The Trustee also asserts that if he were to continue with his litigation against Veristeel, Veristeel would likely be forced into liquidation, which would not likely result in any recovery for the Trustee. The Active Creditors contend that there are potential assets, both present and future, that could be used to satisfy a judgment. However, the Active Creditors have not produced evidence of any specific assets of significant value currently in existence.

The Court finds that this factor weighs in favor of approval of the Settlement Agreement.

### C. Complexity of Litigation and Expense, Inconvenience, and Delay

The Trustee has asserted numerous claims against Scott Cathcart, Veristeel, and the Related Entities, which have been met by numerous defenses. The Trustee argues that these claims are in their early stages and will require a significant amount of work before trial, including several depositions. The Trustee states that he has faced many obstacles in his pursuit of this litigation, including scheduling problems and appeals. The Trustee anticipates that the preparation for and the trial of the litigation against Scott Cathcart, Veristeel, and the Related Entities may take several years and will be extremely expensive. The Active Creditors argue that the complexity and expense of litigation factor does not support approval of the Application because the litigation efforts are well underway and will continue despite this settlement because less than all the parties to these actions are being dismissed. They further state that the significant amount of money spent thus far by the Trustee in conducting discovery and preparing for trial justifies pursuing the litigation to its conclusion.

The Court finds that this factor weighs against approval of the Settlement Agreement.

### D. Interests of Creditors

The Trustee further argues that the proposed sale of Veristeel Stock and the settlement of claims in connection with the sale are in the best interests of the creditors and interest holders of the estate because this resolution provides Debtor's bankruptcy estate with its best opportunity to recover for the transfer of the Scienda assets and is the estate's best hope for an early distribution. The Trustee has determined that a global settlement with respect to the Veristeel assets, which includes the releases of Scott Cathcart and the Related Entities, is the only feasible approach to realize any value for these assets. The Active Creditors assert that the final factor, the paramount interest of the creditors and deference to their reasonable views also supports denial of the Application. Specifically, the Active Creditors argue that the sale of stock combined with the release of the Trustee's own claims against Scott Cathcart, Veristeel and the Related Entities is wholly contrary to the interests of the estate and its creditors because it yields a recovery of less than one percent of the creditors' claims. The Active Creditors further argue that the releases contained within the Settlement Agreement are unnecessarily broad and no consideration is being provided by the individuals and entities that fall within the scope of the releases, other than the consideration provided by Groundswell.

The Court finds that this factor also weighs against approval of the Settlement Agreement.

Despite the anticipated collection difficulties, the Court finds that the factors overall weigh against approval of the Settlement Agreement. The Court believes that the

Active Creditors have raised sufficient questions regarding whether the Settlement Agreement is fair and equitable and in the best interests of the estate. See In re Roman, C/A No. 04-13373-jw, slip op. at 7 (Bankr. D. S.C. Oct. 4, 2006)(denying trustee's application to settle where anticipated recovery for lawsuit appeared to be substantially more than proposed settlement and administrative claims would likely subsume settlement proceeds). Accordingly, based on its review of the evidence, the arguments of counsel, and the factors to be considered to approve a settlement, the Court finds that the Settlement Agreement should not be approved.

Despite being convinced that the Trustee and his counsel have made significant and diligent efforts in this case and believe that the Settlement Agreement is in the best interests of all creditors, the Court is constrained to apply the terms of its prior Order Approving Settlement, the statutes, and case law, which lead to the ruling herein. As stated herein, adjustments to the Settlement Agreement and release may provide sufficient basis for further consideration of this means of resolving the outstanding issues between the parties in this complex case.[11]

For the foregoing reasons, the objection filed by Alan Grayson, the AMG Trust, and General Holding, Inc. is sustained and the Trustee's Application is denied.

**AND IT IS SO ORDERED.**

UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
October **26**, 2007

---

[11] The Court has been advised that a mediation proceeding is being considered by certain parties to the case. The Court fully endorses those efforts and encourages all parties' good faith participation.